IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CUIRCUIT

App No. 21-50378




UNITED STATES OF AMERICA,

Appellee,

Vs. Civ. No. 3:19-cv-320

Cim No. 3:15-cr-1646-2

SAMUEL VELASCO GURROLA,

Appellant.

**DEFENDANT' MOTION FOR ISSUANCE OF CERTIFICATE OF APPEALABILITY PURSUANT TO 28 U.S.C. 2253(c).**

---

Pro se Litigant:

SAMUEL VELASCO GURROLA
Reg. No. 51956-380
UNITED STATES PENITENTIARY
THOMSON
P.O. Box 1002
Thomson, IL. 61285

## I. PRELIMINARY STATEMENT

Defendant Samuel Velasco Gurrola (Appellant), acting Pro se, indigently, respectfully submits this Motion for Issuance of Certificate of Appealability pursuant to 28 U.S.C 2253(c). Appellant offers the affidavit of Ana Rosa Quezada Perez as a new fact in support of his contention. Appellant seeks to appeal from the Judgment of the U.S District Court (Hon. David Briones) dated and entered March 21, 2021(Doc. # 352) which Denied and dismissed Appellant's Section 2255 motion.

District Court for the Western District of Texas issued an Order denying Certificate of Appealability on March 21, 2021. (Doc.# 352).

As shown below, jurist of reason would find Judge Hon. Judge David Briones ruling debatable. This Honorable Court of Appeals should issue a Certificate of Appealability ("COA").

## II. STANDARDS FOR ISSUANCE OF COA

A COA must issue if jurist of reason would find debatable whether the petition states a valid claim of the denial of a constitutional right and that jurist of reason would find it debatable whether the district court was correct its procedural ruling." Slack v. McDaniel, 529 U.S. 473, 484 (2000).

## III. ISSUES FOR APPEAL

**A. Juris of Reason Will Find Debatable that District Court Committed Error in Denying That Attorney Render Ineffective Assistance When Failing To Move**

**To Dismiss Count Four Through Seven of The Superseding Indictment For Lack of Jurisdiction.**

1. **Initial Argument.**

Velasco relies on United States v. Samia, No. (S9) 13 CR 521-LTS, 2016 WL 7223410 (S.D.N.Y. Dec. 13, 2017), for the proposition that his fist superseding indictment charging him with violating 18 U.S.C Sec. 1958(a), Count 4,5,6, and 7, Conspiracy to Cause Travel on Foreign Commerce in Commission of Murder for Hire, is defective because the murders took place in foreign country (Juarez Mexico) does not make it a crime against any State or Federal law.

2. **Abuse of Discretion**

In denying Velasco's motion, the court makes an erroneous comparison among Samia and Velasco. In Samia, defendants were charged with conspiracy to commit murder-for-hire in the Philippines, in violation of 18 U.S.C 1958(a)(Count one). However, in addition they were charged with using and carrying a firearm in relation to a crime of violence constituting murder, in violation of 18 U.S.C 924(j), and 2 (Count Four). Velasco was not charged with violating 18 U.S.C 924(j).

The New York district court initially concluded in Samia that, because neither federal nor state law criminalized "the murder of a non-United States national abroad, the Government could not establish intent to commit a murder in violation of Federal or State law, which was a necessary component of the mens rea element pf Section 1958. Samia, 2016 WL 7223410, at *3. On reconsideration, however, the district court accepted the Government's argument "that Section 1958's requirement that a defendant intended to commit a murder.. in violation of the laws of any State or the United States' and could be satisfied by showing that Defendants intended to violate 18 U.S.C Section 924(j)(1)," as alleged in count four. Samia, 2017 WL 980333, at *4.

The district court in Samia explained:

- Section 924(j)obtains its jurisdictional basis "by incorporating 18 U.S.C Sec. 924(c). " United States v. Lee, 660 F.App'x 8, 17 (2d Cir. 2016). Section

> 924(c)(1)(A) provides for jurisdiction over any person "who, during and in relation to any crime of violence...for which the person may be prosecuted in a court of the United States, uses or carries a firearms." 18 U.S.C Sec. 924(c)(1)(A). The jurisdictional requirement of Section 924(c) is, thus, satisfied by showing that the defendant may be prosecuted in a United States court for a crime of violence. Here, this requirement is satisfied by Count Three of the Indictment, which charges a conspiracy to commit murder. See, e.g., United States v. Doe, 49 F.3d 859, 866(2d Cir. 1995)("Conspiracies that may properly be deemed crimes of violence include those whose objectives are violent crimes or those whose members intend to use violent methods to achieve to achieve the conspiracy's goals.").

Samia , 2017 WL 980333, at *4. Although, the court in Velasco's case correctly exposes that in Samia the court ultimately rejected the concept that alleged Section 1958 violations must always fail whenever the murder at issue occurs outside the United States, also the court turs a blind eye to the fact that this conclusion comes because Section 924(j) obtains its jurisdictional basis "by incorporating 18 U.S.C Section 924(c). However, Samia and Velasco are distinguishable because Velasco's court 4,5,6 and 7 are not for violating Section 924(c).

The district court in Velasco's case also exposes that his first superseding indictment also charges him in count 1,2 and 3 with conspiring to kill a person in a foreign country, in violation of 18 U.S.C 956(a).

The district court also made reference that because Velasco hired Alan Garcia at his sister's El Paso Residence "to murder Ruth's father, Francisco, at his home in Juarez so that Ruth would have traveled to Juarez for the funeral, and because Arturo Garcia (Alan Garcia's father) helped him transport money from Francisco Villareal's safe back to the United States, this two facts clearly establish that some of the element to prove the case were conceived in the United States.

The district court in denying Velasco's 2255, cited United States v. Walker, 596 F. App'x 302, 311 (5th Cir. 2015)(citing Tex. Penal Code Ann. Sections 15.02, 19.02) for the proposition that the Fifth Circuit Court of Appeals has found that even of a Texas conspirator, charged solely with a Section 1958 violation, " intended that the murder occur in Mexico, he would be criminal liable for the conspiracy to commit murder under Texas Law." For this proposition the district

court made reference that the Fifth Circuit explained "[t]he Texas Penal Code extends the state's jurisdiction to criminal offenses when, inter alia, conduct 'that is an element of the offence occurs inside the state,' and when 'conduct inside the state constitutes...[a] conspiracy to commit, or establishes criminal responsibility for the commission of, an offense in another jurisdiction that is also an offense under' Texas law." Id. (citing Tex. Penal Code Ann Sect. 1.04).

The district court explains that the conspiracy to kill in a foreign country counts – like the conspiracy to murder for hire which Velasco challenged in his 2255, motion involved Velasco's schemes conceived in the United States, to kill Escobedo and others in Mexico. For this proposition the court depends largely on the testimony of cooperating witness Arturo Garcia, although during trial at the week-long trial, the Government produced nearly twenty witnesses, none more important than Arturo Garcia to stablish that the crime scheme was planned in the United States at Dalia Valencia's residence at Thunder Ridge in El Paso TX. Arturo Garcia testified extensively to conversations he both participated in and overheard in which Velasco and Garcia's son Alan Velasco and others devised a plan to kill people in a foreign country (Juarez Mexico).

Although other witnesses could have testified about observing movement during 2008 at the Thunder Ridge residence, the theory that the planning was orchestrated in the U.S comes only from Arturo Garcia's testimony during trial.

Despite government's proposition that Arturo Garcia was not the only person who identified Velasco and his brothers making use of the Thunder Ridge house during 2008, the government in its response, proposed that also other witnesses including Carlos Sagredo, Cesar Silva and Sylvia Mendez could have testified that they had observed Dalia Valencia, Emmanuel Velasco, Monica Velasco and Samuel Velasco at or using the Thunder Ridge house on or around 2008. According to the government, challenging the credibility of Arturo Garcia was meritless because other witnesses could have testified about what he testified during trial.

In this case, the four murders of FSV, CSE, RSE, and RMB, each the subject of a separate section 1958 count in the superseding indictment of Velasco, all occurred in Mexico. **(Ex. A; Ex. B, 695, 701, 718, 1211)**. According to cooperating witness Arturo Garcia, the planning of the murders, however, occurred in the United States, specifically in El Paso Texas. **(Ex. B, 784-92, 815-**

16). Garcia testified that Velasco and others planned the murders at 2013 Thunder Ridge (the Thunder Ridge house") in El Paso, Texas. **(Ex. B, 784-92).** Garcia testified that he overheard when Velasco did most of the talking and planning **(Ex. B, 787).** Garcia testified that Velasco wanted to Kill RSE in Mexico to make sure that her murder would not be investigated **(Ex. B, 790).** Garcia testified that him and his son Alan Garcia requested and received cash from Velasco in order to purchase weapons for the murders **(Ex. B, 790-92).** Arturo Garcia also testified that Velasco's sister (Dalia Valencia) rented vehicles in El Paso, Texas, for use in the murders. **(Ex. B, at 817; see trial ex 86, 133).**

Arturo Garcia testified that his son Alan Garcia and his team robbed and murdered FSV at Velasco's behest, and that he helped his son Alan Garcia cross the money from FSV's safe that was located in Juarez, Mexico, into the United States.

Very convenient for the government in structuring Velasco's case, to have someone like Arturo Garcia, the father of Alan Garcia and the alleged hitman, who according to Arturo Garcia committed the murders under Velasco's planning which took place in the United States at 2013 Thunder Ridge. Extremely more convenient is the fact that every step of the planning to perpetrate the murders took place right in front of Arturo Garcia's eyes.

Arturo Garcia's son, Alan Garcia was married to Ana Rosa Quezada Perez. Alan Garcia however was murdered on April 22, 2009. According to this case, Alan Garcia and his team of hitman (Ruben Alejandro Garcia Vadiviezo a.k.a Homie ("Homie") and Luis Nieves Ochoa a.k.a Chino ("Chino") were the perpetrators of murdering FSV, CSE, RSE, and RMB in Juarez Mexico contracted by Valencia.

3. **Affidavit of Ana Rosa Quezada Perez Disproves Credibility of Arturo Garcia, Alan Garcia's Father.**

**<u>New Fact.</u>**

In his 2255 motion, Velasco exposed that counsel had rendered ineffective assistance by not calling Ana Rosa Quezada Perez to testify at his trial. (Memo of Law, 16-17).

Good reason exists for Velasco's argument, because Ana Quezada (hereafter Quezada) was married and lived with Alan Garcia during 2007, 2008 and until 2009 on April 22, 2009 specifically when Alan Garcia was murdered. **See Affidavit of Ana Rosa Quezada Perez** **Exhibit A.**

In her affidavit Quezada describes the specific motive in which Arturo Garcia relied when he opted to testify on Velasco's trial and reasons why he acted as a cooperating witness against the Velasco Gurrola family.

In this case affidavit from Quezada clearly diminished the credibility of Arturo Garcia and exposes motive for misrepresenting critical facts that were used against Samuel Velasco Gurrola during his trial.

Quezada did testify in Velasco's trial, however, not in any way called by Velasco's attorney to clarify motive by Arturo Garcia or any of the relevant facts presented here.

Quezada brings new light in Velasco's case by stating that she encountered with Arturo Garcia in multiple occasions because he is the grandfather of her child. Also Quezada presents that Garcia has discussed many of the relevant facts about the Velasco's case with her, however, on September 16, 2020, she during Alan Garcia's birthday celebration (after his death) at the "Corralito Stake House restaurant" in El Paso Texas, while gather, Arturo Garcia again made reference to the Velasco Gurrola brohters criminal case. Specifically, he recounted how he testified and his motive to testify against the Velasco Gurrola's family criminal case. He stated that he testified against Samuel Velasco and misrepresented much of the information relevant for his conviction, because he suspected that Emmanuel Velasco Gurrola had murdered his son Alan Garcia. He confessed that as an act of revanche against the Velasco Gurrola's family, he took advantage of the opportunity offered by the government. His exact words were, " Es mejor que lloren en casa agena y no en la mia", ("I glader have people crying in someone else's house but not on mine."). Arturo Garcia also stated that he was facing 20-years in federal prison and that by testifying against Samuel Velasco Gurrola he received leniency. He stated that he then when facing criminal charges also had other minor children that he had to economically support, that he needed to be free.

Most important, he states that he hated Emmanuel Gurrola because he suspected that he had killed his son Alan Garcia at a safe house addressed at Reyna Faviola House Division in Juarez Mexico. **See. Ana Rosa Quezada Perez's Affidavit Attached. Exhibit A.** His revenge was to testify against Samuel Velasco Gurrola.

**4. Jurisdiction In Velasco's Case Was Based on Government's Witness Arturo Garcia's Credibility.**

Fifth Circuit explained that "[t]he Texas Penal Code extends the state's jurisdiction to criminal offenses when, inter alia, conduct 'that is an element of the offence occurs inside the state,' and when 'conduct inside the state constitutes...[a] conspiracy to commit, or establishes criminal responsibility for the commission of, an offense in another jurisdiction that is also an offense under' Texas law." Id. (citing Tex. Penal Code Ann Sect. 1.04).

In Velasco's Section 2255 motion, he raises that the Government lacks jurisdiction in convicting him of violating Section 1958(a) in count 4,5,6, and 7, because the murders were committed outside the United States. Velasco relies on United States v. Samia, No. (S9) 13 CR 521-LTS, 2016 WL 7223410 (S.D.N.Y. Dec. 13, 2017), for the proposition that his fist superseding indictment charging him with violating 18 U.S.C Sec. 1958(a), Count 4,5,6, and 7, Conspiracy to Cause Travel on Foreign Commerce in Commission of Murder for Hire, is defective because the murders took place in foreign country (Juarez Mexico) does not make it a crime against any State or Federal law.

**First,** the district court abused its discretion in relying on the jurisdictional portion of Samia in which on reconsideration Samia's district court accepted the Government's argument "that Section 1958's requirement is satisfied by showing that Defendant intended to violate 18 U.S.C Section 924(j)(1), " as alleged in count four in Samia's case.

However, for this proposition the court explained that Section 924(j) obtains its jurisdictional basis "by incorporating 18 U.S.C Section 924(c)."

This analysis is not applicable in Velasco's case, because he was not charged with 18 U.S.C Section 924(c). The district court abused its discretion when comparing Velasco's case to Samia's on this portion of such a critical jurisdictional issue.

**Second,** whether conduct that is an element of the offense occurred inside the 'State' or the 'United States' jurisdiction in Valencia's criminal case, comes and was

established from Arturo Garcia's testimonies, a cooperating government's witness who has admitted lying in trial as a matter of revenge under the assumption that at least one of the Velasco's brothers was involved in the murdering of his son Alan Garcia. **See. Affidavit of Ana Rosa Quezada Perez.**

Ms. Quesada prior to trial was interviewed by the government, and she then explained the above facts, however, the government selectively turned a blind eye to Ms. Quesada's testimony and only and selectively made use of what the government deemed important in prosecuting Velasco.

Velasco relies on the above mentioned to argument that the district court abused its discretion by relying on the incorrect interpretation of law to deny his case. Court's interpretation of United States v. Samia, No. (S9) 13 CR 521-LTS, 2016 WL 7223410 (S.D.N.Y. Dec. 13, 2017 is correct only in the event that defendants under the same circumstances as Samia are charged with 18 U.S.C 924(c).

- Section 924(j)obtains its jurisdictional basis "by incorporating 18 U.S.C Sec. 924(c). " United States v. Lee, 660 F.App'x 8, 17 (2d Cir. 2016). Section 924(c)(1)(A) provides for jurisdiction over any person "who, during and in relation to any crime of violence...for which the person may be prosecuted in a court of the United States, uses or carries a firearms." 18 U.S.C Sec. 924(c)(1)(A). The jurisdictional requirement of Section 924(c) is, thus, satisfied by showing that the defendant may be prosecuted in a United States court for a crime of violence.

  In Samia, this requirement was satisfied by Count Three of the Indictment, which charges a conspiracy to commit murder. See, e.g., United States v. Doe, 49 F.3d 859, 866(2d Cir. 1995)("Conspiracies that may properly be deemed crimes of violence include those whose objectives are violent crimes or those whose members intend to use violent methods to achieve to achieve the conspiracy's goals."). However, Velasco was not charged with Section 924(c) and wherefore district court's analysis was incorrect. The portion of Samia that the District Court applied to deny Velasco's 2255 is absolutely incorrect and constitutes an abuse of discretion.

This court must review the district court's factual findings for clear error and conclusions of law de novo. United States v. Underwood, 597 F.3d 661, 665 (5th Cir. 2010). Because an ineffective assistance of counsel claim is a mixed question of law and fact, this court must review it de novo. United States v. Bass, 310 F.3d 321, 325 (5th Cir. 2002). This court must review a district court's denial of a § 2255 motion without a hearing for an abuse of discretion. United States v. Cervantes, 132 F.3d 1106, 1110 (5th Cir. 1998).

A trial court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." United States v. Yanez Sosa, 513 F.3d 194, 200 (5th Cir.2008) (internal citations omitted).

In addition, in the circumstances of this case, the affidavit of Ana Quezada respecting confessions of her father-in-law and government's star witness Mr. Arturo Garcia's testimony that government submitted to the magistrate judge's report, this court must conclude that it would be an abuse of discretion to refuse to consider a new fact that changes the outcome of the proceedings. That is, exclusion of the evidence would amount to "a clear error of judgment ... upon a weighing of the relevant new factors in this case." United States v. Walker, 772 F.2d 1172, 1176 n. 9 (5th Cir.1985).

## CONCLUSION

Now Velasco presents Ms. Quesada's affidavit as part of a new fact that may well change the prospective in this case. In addition, juris of reason may find debatable district court's abuse of discretion in relying in an erroneous analysis of United States v. Samia, No. (S9) 13 CR 521-LTS, 2016 WL 7223410 (S.D.N.Y. Dec. 13, 2017), for the proposition that his fist superseding indictment charging him with violating 18 U.S.C Sec. 1958(a), Count 4,5,6, and 7, Conspiracy to Cause Travel on Foreign Commerce in Commission of Murder for Hire, is defective because the murders took place in foreign country (Juarez Mexico) and does not make it a crime against any State or Federal law.

Based on the above, Samuel Velasco Gurrola prays that this honorable court of appeals grant Certificate of Appealability (COA) and allow him to present a fruitful appeal in this matter.

Date:

Respectfully Submitted

Samuel Velasco Gurrola

**CERTIFICATE OF SERVICE**

I, Samuel Velasco Gurrola, hereby certify under penalty of perjury that on this June 22, 2021, I placed a copy of the foregoing application of issuance of a Certificate of Appealability, in the hands of prison officers at the Daviess County Detention Center Ky., mailing system with sufficient prepaid postal. A copy of the foregoing is to be served to the U.S. Attorney's office for the Middle District of Tennessee.

Respectfully Submitted

Samuel Velasco Gurrola.

# ATTACHMENT A.

STATE OF New Mexico)

) ss

COUNTY OF Sandoval )

## AFFIDAVIT OF ANA ROSA QUEZADA PEREZ

Ana Quezada, being duly sworn on my oath, solemnly swear and attest the following:

I, Ana Quezada, a female resident of 12898 Untermyer, St, El Paso Texas, 79928., declare that I lived with Alan Garcia for several years prior to his death and during 2007,2008 and 2009 in Juarez Chihuahua, Mexico and in El Paso Texas. Me and Alan Garcia procreated one child.

On April 22, 2009, Alan Garcia was murdered. Although I ignored Allan Garcia's illegal activities while we lived together, after his death I learned that he was involved with other people in the commission of wrongful acts.

Mr. Arturo Garcia is Alan Garcia's biological father. Prior to March 30, 2020, me and Mr. Arturo Garcia had our differences, however through Allan Garcia's sister Arturo Garcia sent me a message petitioning that he desired see my son (his grandson), I agreed that he could see him and further I agreed that my son could travel with him in times, since Mr. Arturo Garcia worked as a truckdriver and traveled to different states of the United States.

For the next few months my son spent a lot of time with his grand farther Mr. Arturo Garcia, and I would also see him and gather at his house in occasions and talk about Alan Garcia and many of his history.

However, during one encounter on September 16, 2020, and during Alan Garcia's birthday, at the "Corralito Stake House restaurant" in El Paso Texas, Mr. Arturo Garcia made reference to the Gurrola's brothers. Specifically, he recounted how he testified and his motive to testify against the Gurrola's brother's. He stated that he had to misrepresent much of the information that the government used against the Gurrola's brothers in exchange for leniency because he was facing 20-years in prison. His exact words that Mr. Arturo used were "I gladder have people crying in

someone else's house but not on mine" he also stated that he had other minor children that he had to economically support. He also stated that he hated Emmanuel Gurrola because he suspected that Emmanuel had killed his son Alan Garcia.

His theory was that Emmanuel Gurrola had killed Allan Garcia in Juarez at a safe house addressed at Reyna Faviola House Division.

Arturo Garcia admitted that in revenge for Emmanuel Gurrola killing his son, he testified and misrepresented the information used against the Gurrola's brothers during their criminal case, including alleged gatherings at Dalia Valencia's house and alleged plans to commit the crimes in which the Gurrola brothers were charged of committing.

After the gather our gathering at the Corralito Steak Housein El Paso Texas, I only encountered with Arturo Garcia one more time and after that I lost contact with him, and he stopped seeing my son.

I hereby state that the information here is both accurate and complete, and relevant information and has not been omitted.

**Sworn to and Subscribed** before me this 10th day of June, 2021

Dalila Arreola

**Public Notary**

OFFICIAL SEAL
Dalila Arreola
NOTARY PUBLIC - STATE OF NEW MEXICO
My Commission Expires: July 2nd 2023

Ana Rosa Quezada Perez

My Commission Expires On: July 2nd, 2023


Texas
LIMITED TERM
IDENTIFICATION CARD
3. DOB 07/09/1989
4b. Exp 12/02/2024
4a. Iss 03/15/2021
1. QUEZADA PEREZ
2. ANA ROSA
16. Hgt 5'-03"
15. Sex F
BRO
DONOR

# ATTACHMENT A.

Samuel Velasco Gurrola
Reg. No. 51956-380
United States Penitentiary
Thomson
P.O. Box 1002
Thomson, IL. 61285

FOREVER / USA FOREVER / USA FOREVER / USA FOREVER / USA FOREVER / USA

Albuquerque NM P&DC 87101
WED 23 JUN 2021 AM

United States Court of Appeals
for The Fifth Circuit
600 S. Maestri Place Suite 115
New Orleans, LA. 70130

LEGAL MAIL